Argued and submitted February 13, reversed and remanded for reconsideration
September 6, 1995

OREGON OCCUPATIONAL SAFETY
& HEALTH DIVISION,
*Petitioner,*

*v.*

Daren Richard OSTLIE,
*Respondent.*

(SH-92165; CA A84285)

902 P2d 580

Richard D. Wasserman, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Elliott Cummins argued the cause for respondent. On the brief were George W. Goodman and Cummins, Brown, Goodman, Fish & Peterson, P.C.

Before Riggs, Presiding Judge, and Richardson, Chief Judge, and Leeson, Judge.

RIGGS, P. J.

## RIGGS, P. J.

The Oregon Occupational Safety and Health Division (OR-OSHA) seeks review of an order of a referee of the Workers' Compensation Board in this proceeding under the Oregon Safe Employment Act, ORS 654.001 *et seq.* The referee dismissed all seven citations against employer for the reason that OR-OSHA's Safety Compliance Officer (SCO) violated statutory and administrative procedural requirements.

The referee made these uncontested findings:

"[Employer] was awarded a contract by the U.S. Department of Agriculture Forest Service [USFS] to blast the tops of live conifer trees located solely within the Mt. Hood National Forest on public lands owned by the United States. The purpose of this contracted service was to create wildlife habitat. The employer's performance of this service was overseen by the [USFS] contracting officer's representative. The contract specified certain safety obligations of the employer. The [USFS] had the right to inspect employer's work and camp-site at any time and did so.

"[Employer] hired his younger brother, Jason Ostlie, to work as his employee. During operations on December 16, 1991, Jason Ostlie was accidentally injured due to a premature detonation of dynamite he had prepared in a tree located within the Mt. Hood National Forest. The employer was the first one on the scene and immediately used a cellular telephone to send for an ambulance. An ambulance from Estacada, Oregon, responded and stabilized employee Jason Ostlie. A 'life flight' was then called for and soon the employee was flown to Emanual Hospital in Portland, Oregon. By that time [USFS] personnel were on the scene so the employer asked one Forest Service employee to 'secure' the dynamite and other blasting materials, which was done promptly. The employer left the premises by private vehicle and traveled to the hospital.

"[OR-OSHA] was notified of the accident on December 17, 1991 and [SCO] Bruce Lawson arrived at the Estacada Ranger Station at 2:30 p.m. that afternoon. Guy Price, Contract Office Representative for [USFS], and William Cortain, Head Blaster for the Mt. Hood National Forest, [USFS] were present. Neither [employer] nor anyone employed by [employer], was present at the Ranger Station. [USFS] knew the injured worker had been flown to Emanual

Hospital in Portland. [USFS] also knew the employer's address and phone number and had frequently communicated with him during the course of the contract, and knew the employer was probably at his brother's side in the hospital. No one made any effort to locate the employer.

"SCO Lawson presented his 'credentials' and conducted an 'opening conference' with those individuals who were present at the ranger station. At approximately 3:00 p.m. that same day SCO Lawson went to the accident site before attempting contact with, or presenting credentials to, the employer. Guy Price and William Cortain accompanied SCO Lawson to the site. SCO Lawson first arrived at the accident site at approximately 3:30 p.m. Neither [employer] nor anyone employed by [employer] was at the accident site at that time. SCO Lawson took photographs and interviewed Price and Cortain. The artifacts of the accident and the accident site were not disturbed. SCO Lawson, Price and Cortain left the accident site around 4:00 p.m. as night was falling. They returned to the Estacada Ranger Station. SCO Lawson then inquired about the best way to contact [employer.] Price contacted [employer], and arranged a meeting at the Estacada Ranger Station for the next day, (December 18, 1991) at 1:00 p.m. * * *

"On the morning of December 18, 1991, SCO Lawson, together with fellow SCO Fritz Schukar, returned to the Estacada Ranger Station, reviewed the [USFS] contract folder, and then returned to the accident site to take measurement. SCOs Lawson and Schukar were again accompanied to the site by Price and Cortain. No representatives of the employer had been invited to go to the site with SCO Lawson. No representative of the employer was present. On this second visit to the site, the wires and other evidence which related to the blast were moved from their positions, thereby obscuring whatever might have been the original condition of those wires and items.

"Returning to the Estacada Ranger Station at 1:00 p.m. on December 18, 1991, SCOs Lawson and Schukar met with [employer] for the first time. They presented their credentials, conducted an opening conference, and interviewed [employer].

"Following the investigation by SCOs Lawson and Schukar, OR-OSHA issued a citation to the employer for seven violations of the Oregon Safe Employment Act for alleged activities of the employer arising out of the employer's contract with [USFS]."

Employer sought dismissal of the citations on the grounds that OR-OSHA had violated the statutes and rules with regard to the presentation of credentials, ORS 654.067(1); OAR 437-01-065(2); the conduct of the opening conference, OAR-437-01-075; and the inspection of the employment premises, ORS 654.067(4); OAR 437-01-080(3). The referee concluded that OR-OSHA had acted improperly in each instance and held that the citations must be dismissed.

■    ORS 654.067 provides:

"(1)   In order to carry out the purposes of ORS 654.001 to 654.295 and 654.750 to 654.780, the director, *upon presenting appropriate credentials to the owner, employer or agent in charge, is authorized:*

"(a)   *To enter without delay and at reasonable times any place of employment; and*

"(b)   *To inspect and investigate* during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment and materials therein, and to question privately the owner, employer, agents or employees.

"(c)   No person shall give an owner, employer, agent or employee advance notice of any inspection to be conducted under ORS 654.001 to 654.295 and 654.750 to 654.780 of any place of employment without authority from the director.

"(3)   Except in the case of an emergency, or of a place of employment open to the public, if the director is denied access to any place of employment for the purpose of an inspection or investigation, such inspection or investigation shall not be conducted without an inspection warrant obtained pursuant to ORS 654.202 to 654.216, or without such other authority as a court may grant in an appropriate civil proceeding. Nothing contained herein, however, is intended to affect the validity of a constitutionally authorized inspection conducted without an inspection warrant.

"(4)   A representative of the employer and a representative authorized by the employees of the employer shall be given an opportunity to accompany the director during the inspection of any place of employment for the purpose of aiding such inspection. Where there is no employee representative, or the employee representative is not an employee of the employer, the director should consult with a reasonable

number of employees concerning matters of safety and health in the place of employment." (Emphasis supplied.)

The referee held that SCO Lawson violated ORS 654.067(1) in failing to present his credentials to employer before entering and inspecting the premises. OR-OSHA contends that when the property to be inspected is public property, the provisions of ORS 654.067 are inapplicable and there is no need for the SCO to present credentials. That argument was not made to the referee, and we decline to consider it on review.

■      OR-OSHA also contends that the SCO complied with ORS 654.067(1) by showing his credentials to the "owner" of the property, the USFS official. It is agreed that USFS, on behalf of the public, is the owner of the land on which employer's blasting operations took place. ORS 654.005 provides:

"As used in this chapter, unless the context requires otherwise:

"* * * * *

"(6)  *'Owner' means and includes every person having ownership, control or custody of any place of employment or of the construction, repair or maintenance of any place of employment.*" (Emphasis supplied.)

ORS 654.005(8) defines "place of employment" as

"every place, whether fixed or movable or moving, whether indoors or out or under ground, and the premises and structures appurtenant thereto, where either temporarily or permanently an employee works or is intended to work and every place where there is carried on any process, operation or activity related, either directly or indirectly, to an employer's industry, trade, business or occupation, including a labor camp provided by an employer for employees or by another person engaged in providing living quarters or shelters for employees, but 'place of employment' does not include any place where the only employment involves non-subject workers employed in or about a private home."

On their face, the words of the statutes permit the presentation of credentials to the owner of the "place" at which an employee is working or a business is operating, whether or not that person is also the employer. Employer reasons, nonetheless, that when it is considered in its context, the

requirement for the presentation of credentials evidences the legislature's intention to provide notice to a person responsible for the business operations and potentially subject to citation for violations, and that it is not sufficient to present credentials to the owner of the "place," if that person is not also connected with the employment operations.

Even assuming, without deciding, that the statutes require that the owner presented with credentials have some nexus with the employment operations beyond mere ownership of the premises, we conclude that the connection is present here. Although USFS had no ownership interest in the business of employer, it had an interest in the project it had contracted with employer to have performed. By virtue of its contractual agreement with employer, USFS had the right to see that the services provided were accomplished safely. It had the right to enter the premises for the purpose of making inspections of the worksite. It did not give up its possession of the premises. We conclude that USFS was the owner of the place of employment as defined in the statutes and that USFS personnel could receive credentials from an SCO for the purpose of an OR-OSHA inspection.

■ OR-OSHA does not challenge the referee's determination that its inspection of the place of employment violated ORS 654.067(4), which provides that

> "*[a] representative of the employer and a representative authorized by the employees of the employer* shall be given an opportunity to accompany the director during an inspection of the place of employment for the purpose of aiding in the inspection." (Emphasis supplied.)

In the light of OR-OSHA's concession, we need not address whether the inspection may also have violated OR-OSHA's administrative rules regarding the presence of the employer or the employer's representative at an inspection or joint opening conference. It is necessary to consider, however, what sanction, if any, is appropriate in the light of the statutory violation.

The referee first considered only excluding the evidence obtained as a result of the improper inspection, but then reasoned that the inspection had tainted not only the

evidence obtained directly from it, but the entire investigation, and that it was impossible to segregate the properly obtained evidence. He ruled that the entire investigation was unlawful and that, accordingly, there was no statutory basis for the issuance of the citations.

There is no express statutory authorization for the dismissal of citations or the exclusion of evidence obtained through invalid procedures; nor are those consequences expressly foreclosed by the statutes. ORS 654.071(1) provides:

> "If the director or an authorized representative of the director has *reason to believe, after inspection or investigation of the place of employment,* that an employer has violated any state occupational safety or health law, regulation, standard, rule or order, the director or the authorized representative *shall* with reasonable promptness issue to such employer a citation, and notice of proposed civil penalty, if any, to be assessed under this chapter, and fix a reasonable time for correction of the alleged violation." (Emphasis supplied.)

The referee apparently assumed that that statute requires a valid inspection or investigation *of the premises* as a prerequisite to the issuance of a citation. OR-OSHA contends that, even assuming that its inspection of the premises was invalid because of the statutory violation, its investigation beyond the premises was proper and provides an adequate basis for the issuance of the citations.

■■ ORS 654.031 describes the director's duty to order corrections of unsafe working conditions:

> "Whenever the director has reason to believe, after an inspection or investigation, that any employment or place of employment is unsafe or detrimental to health or that the practices, means, methods, operations or processes employed or used in connection therewith are unsafe or detrimental to health, or do not afford adequate protection to the life, safety and health of the employees therein, the director shall issue such citation and order relative thereto as may be necessary to render such employment or place of employment safe and protect the life, safety and health of employees therein. The director may in the order direct that such additions, repairs, improvements or changes be made, and such devices and

safeguards be furnished, provided and used, as are reasonably required to render such employment or place of employment safe and healthful, in the manner and within the time specified in the order."

The investigation of a violation is not limited to the place of employment. In *Oregon Occupational Safety v. Don Whitaker Logging,* 124 Or App 246, 249, 862 P2d 526 (1993), *rev den* 318 Or 458 (1994), we held that OR-OSHA's off-premises investigations are not subject to the requirements of ORS 654.067 regarding the presentation of credentials and the presence of the employer or its representative at an inspection, and that that statute "addresses only that aspect of the inspection or investigation that is made on the employer's premises." Off-premises investigation may also yield evidence necessitating the issuance of a citation. Thus, contrary to the referee's conclusion, a valid inspection of the premises is not a prerequisite to the issuance of a citation.

It is not apparent that evidence obtained from the SCO's off-premise investigation in this case is tainted by the procedural defect associated with the inspection of the premises. Several of the alleged safety violations relate to matters not involving the premises itself, such as the training and credentials of employees and the safety equipment worn by them. On remand, the referee should consider, in the first instance, whether the alleged safety violations were established by evidence other than that obtained directly from the invalid inspection of the premises.

■ Because the question may arise on remand, we consider OR-OSHA's contention that, when the director has reason to believe that a safety violation has occurred, dismissal of the citation is not an appropriate sanction for improper procedures unless the failure to comply with the statutory requirements resulted in substantial prejudice to the employer. For guidance, we have examined the federal OSHA case law on which OR-OSHA relies. As we understand the cases, the existence of prejudice to the employer becomes relevant only when the agency has substantially complied with the procedural requirements. *Marshall v. C.F. & I. Steel Corp.,* 576 F2d 809, 813-14 (10th Cir 1978); *Hartwell Excavating Co. v. Dunlop,* 537 F2d 1071 (9th Cir 1976). Here, OR-OSHA has made no attempt to show that, if it did not fully

comply with the statutory requirement permitting the employer or its representative to accompany OR-OSHA on an inspection, then it substantially complied. There is no attempt by OR-OSHA to justify the adoption of a standard for compliance with procedural safeguards that is less rigorous than the federal standard. When there has been no showing of substantial compliance by OR-OSHA, we will not restrict the referee's authority to dismiss citations to cases involving prejudice to the employer.

Reversed and remanded for reconsideration.